UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JAVON WEBSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:17-cv-00030 |
| v. ) | Judge Campbell |
| ) | Magistrate Judge Brown |
| ) | |
| DR. (f/n/u) COBLE, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Chip Campbell, United States District Judge

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendant's motion for summary judgment (Docket Entry No. 70). For the following reasons, the Magistrate Judge **RECOMMENDS** that (1) this motion be **GRANTED;** (2) that all pending motions be **DENIED AS MOOT;** (3) that Plaintiff's claims against Defendant be **DISMISSED WITH PREJUDICE**; (4) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (5) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

**I. BACKGROUND**

Plaintiff, Javon Webster, an inmate incarcerated at South Central Correctional Facility ("SCCF") in Clifton, Tennessee, filed this *pro se* action under 42 U.S.C. § 1983 against Defendant, Dr. Robert Coble.[1] Plaintiff asserts an Eighth Amendment claim that Defendant denied him adequate medical care. Before the Court is Defendants' motion for summary judgment (Docket Entry No. 70), contending that Plaintiff failed to exhaust his administrative remedies; that any claims arising

---

[1]Plaintiff's claims against other Defendants were dismissed on initial review. (Docket Entry No. 17).

prior to March 29, 2016 are barred by the statute of limitations; and that the record shows that Defendant did not deny Plaintiff necessary medical care or treat Plaintiff with deliberate indifference. *Id.* at 6, 7, 11. Plaintiff filed a response in opposition. (Docket Entry No. 80), to which Defendant filed a reply (Docket Entry No. 94).

## II. SUMMARY OF PERTINENT FACTS[2]

Plaintiff is an inmate at SCCF, and Defendant was employed as a physician at SCCF from October 23, 2012, until August 4, 2016. (Docket Entry No. 82, Plaintiffs Response to Defendant's Statement of Undisputed Facts, ¶¶ 1, 38; Docket Entry No. 70-3, Coble Declaration, at ¶ 3). Plaintiff's claims arise out of an injury to his finger on his left hand that he sustained on November 27, 2015 while playing basketball, and a later injury on June 7, 2016 that he suffered to his right knee when he dropped several cookie sheets on it. (Docket Entry No. 17, at 3).

### A. GRIEVANCE POLICY AND GRIEVANCES

SCCF follows the Tennessee Department of Corrections ("TDOC") policy that allows inmates to submit a written complaint/grievance concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within SCCF that personally affects the inmate. (Docket Entry No. 82, at ¶ 2). The policy requires inmates to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." *Id.* at ¶ 4. Grievances may be returned as inappropriate

---

[2]Defendant filed contemporaneously with his motions for summary judgment a statement of undisputed facts (Docket Entry No. 70-2), in accordance with Local Rule 56.01(b). Where Plaintiff responded to certain statements of facts as disputed, but failed to cite to specific citations in the record to support his responses or cited to records that do not support Plaintiff's responses, such statements of undisputed material facts are deemed undisputed for failure to comply with Fed. R. Civ. P. 56(c)(1) and Local Rule 56.01(c)(3).

2

if an inmate attempts to grieve inappropriate matters such as institutional placement, classification, or Security Threat Group program placement. *Id*. at ¶ 6. An inappropriate grievance will be returned to an inmate, who can then appeal its designation as inappropriate or refile an appropriate grievance that complies with TDOC policy. *Id*. at ¶ 7. A grievance is properly exhausted where the grievance complies with applicable TDOC policies and the inmate appeals any adverse response through the TDOC Commissioner's Office. *Id*. at ¶ 8.

TDOC Policy 501.01 provides, in relevant part, as follows:

C. Grievance Review Process: . . . [I]nmate grievances shall follow the following process

1. First Level: Grievances must be filed utilizing CR-1394 within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance. The chairperson shall review all grievances received and logged them as received and enter them on Grievance screen (LIBG).

    All copies of the form must be legible and intact. Grievance forms which are improperly completed or contain insufficient information for processing shall be returned to the inmate with instructions as to proper completion. It should not be logged as received (which starts the deadline times running) until the corrected version is submitted.

. . . .

    The chairperson's response shall be written on CR-1394 following the chairperson's receipt and review of the supervisor's response. There will be a seven working-day time limit at Level I beginning on the day the grievance begins to be processed. If a grievant accepts the supervisor's response documented on Response of Supervisor of Grieved Employee or Department, CR-3148. The grievance chairperson shall enter the approval on Grievance (LIBG).

2. Second Level: Within five calendar days of being notified of the Level I response, the grievant may appeal the response to the grievance committee and Warden. A hearing shall be held within five working days of an appeal's filing. Within five working days of the hearing, the committee's proposed response shall be documented on

3

the Inmate Grievance Response, CR-1393, and forwarded to the Warden. Within seven working days of receipt, the Warden shall forward his/her decision to the chairperson. Within five working days of receiving the Warden's response, the chairperson will allow the grievant to review the grievance materials and responses. If the grievant accepts the Level II response, the grievance chairperson shall enter the approval on Grievance (LIBG). The failure of staff to comply with a directive by the Warden as a result of the Warden's review of the grievance may result in disciplinary action. If the Warden agrees to the grievant's requested solution, the grievant shall not have the right to appeal to Level III.

. . . .

3. <u>Third Level</u>: A grievant may appeal the Level II response within five calendar days of receipt of that response. The chairperson shall forward one legible copy of the grievance and all documentation to the Deputy Commissioner of Operations/designee. The Level III response shall be sent to the grievance chairperson for distribution within 25 working days of the date the appeal was received. The chairperson shall enter the final decision on Grievance (LIBG). This response is final and is not subject to appeal. . . .

D. If a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process, unless the inmate agrees in writing to a fixed extension of the time limit for response.

. . . .

H. <u>Matters Inappropriate to the Grievance Procedure</u>: If the chairperson determines a matter to be non-grievable, the grievant may appeal that decision as outlined in the handbook *TDOC Inmate Grievance Procedures*. Inappropriate grievance notification, CR-3689, shall be used to inform the inmate of an inappropriate grievance. The grievance process is inappropriate for:

. . . .

8. Diagnoses by medical professionals, medical co-payments where Policy #113.15 has been adhered to, and requirements of substance abuse therapeutic programs.

(Docket Entry No. 82-1, at 3-4, 5).[3]

Defendant presents evidence of Plaintiff filing four grievances from April 16, 2015 through March 24, 2017. (Docket Entry No. 82, at ¶¶ 11-28; Docket Entry No. 1, at 3). None of these grievances mentioned Defendant Coble. *Id*. at ¶¶ 12-28. One grievance, submitted June 11, 2016, referenced Plaintiff dropping cookie sheets on his knee. *Id*. at ¶ 16; Docket Entry No. 70-4, at 11-12. There, Plaintiff only mentioned "Food Manager Brown," "Food Supervisor McGerry," and "Sgt. West" and requested a job drop from the kitchen and reprimands for the food manager and food supervisor. *Id*. at ¶¶ 17-18; Docket Entry No. 70-4, at 11-12. Within this grievance, Plaintiff referenced that he was escorted to medical where he was seen for his alleged knee injury. *Id*. at ¶ 19. None of the other three grievances referenced Plaintiff's injuries to his finger or his knee or mentioned Defendant Coble. *Id*. at ¶¶ 12-15, 21-28.

Plaintiff presents evidence of additional grievances that he submitted that referenced Defendant Coble and pertained to Plaintiff's medical care, but that were deemed improperly filed and were not processed. On December 15, 2015, Plaintiff filed a grievance, stating that on November 27, 2015, he injured his left pinky finger while playing basketball and that he was seen by Defendant a few times following his injury. (Docket Entry No. 81-2, at 2-3). Plaintiff complained about his medical care and being denied pain medication for his hand. *Id.* at 2. On December 16, 2015, Plaintiff received an Inappropriate Grievance Notification from Grievance Chairperson, Leigh Staggs, who returned Plaintiff's grievance as being "inappropriate to the grievance procedure" because it concerned "[a] diagnosis by medical professionals . . . ." (Docket

---

[3]Plaintiff filed TDOC Policy 501.01. Defendant neglected to file a copy of the policy or a copy of *TDOC Inmate Grievance Procedures*.

Entry No. 81-3, at 2). A provision at the bottom of the Inappropriate Grievance Notification stated, "If you would like to appeal this response, sign the bottom of your grievance, check 'yes' then date it and place (with this coversheet) back in the grievance box." *Id*. At the bottom of the grievance form, it provided: "Do you wish to appeal this response? _____ Yes _____ No. If yes: Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response." (Docket Entry No. 81-2, at 2). On December 16, 2015, Plaintiff marked at the bottom of his unprocessed grievance that he wished to appeal the response. *Id*. On December 21, 2015, Plaintiff's grievance was again denied by Staggs and returned to him with an Inappropriate Grievance Notification, highlighting that Plaintiff's grievance was denied as "inappropriate to the grievance procedure" because it concerned "[a] diagnosis by medical professionals" and because Plaintiff had previously filed a grievance on that issue and inmates were prohibited from filing "more than one grievance arising out of the same or similar incident." (Docket Entry No. 81-5, at 2).

On June 28, 2016, Plaintiff filed a grievance concerning his injuries he suffered when he dropped the cookie sheets on his knee and complained about his dissatisfaction with medical care from Defendant, particularly being denied pain medication. (Docket Entry No. 81-6, at 2-4). On June 30, 2016, Plaintiff's grievance was returned to him by Staggs as "inappropriate to the grievance procedure" because it concerned "[a] diagnosis by medical professionals . . . ." (Docket Entry No. 81-7, at 2). Plaintiff signed at the bottom of his unprocessed grievance that he wished to appeal the response, but Plaintiff's grievance was denied by Staggs on July 8, 2016, as it involved "[a] diagnosis by medical professionals" and because Plaintiff was prohibited from filing "more than one grievance arising out of the same or similar incident." (Docket Entry No. 81-8, at 2).

### B. MEDICAL TREATMENT

Defendant submits medical records showing Plaintiff's treatment history while he was incarcerated at SCCF. (Docket Entry Nos. 70-5, 70-6 and 70-7). On November 27, 2015, Plaintiff presented to medical at SCCF, reporting pain to his fifth digit on his left hand. (Docket Entry No. 82, at ¶ 40). Dr. Coble ordered a left hand x-ray for Plaintiff that he received that same day. *Id.* at ¶ 41. The x-ray revealed no fracture or dislocation, no evident abnormal soft tissue swelling, and no abnormal calcifications. *Id.* at ¶¶ 42-44. The impression from the x-ray was unremarkable left hand. *Id.* at ¶ 45. Dr. Coble ordered Plaintiff Ibuprofen 200 mg to be taken twice a day for seven (7) days. *Id.* at ¶ 46; Docket Entry No. 70-5, at 174. On December 13, 2015, after Plaintiff submitted a sick call request, he was evaluated at medical that day, and was ordered Ibuprofen 200 mg to be taken three (3) times per protocol. *Id.* at ¶¶ 48-49. On December 14, 2015, Plaintiff was evaluated in medical, whereby he was ordered Ibuprofen 200 mg to be taken three (3) times per day for seven (7) days, his finger was splinted, and he was instructed to follow up with medical if he continued to experience symptoms with his finger. *Id.* at ¶¶ 50-52.

On December 21, 2015, Plaintiff submitted a sick call request, and on the next day, Plaintiff was evaluated in medical for pain in his fifth digit of his left hand. *Id.* at ¶¶ 53, 54. Based upon Plaintiff's evaluation, Plaintiff was referred to a provider. *Id.* at ¶ 55. On January 8, 2016, Defendant treated Plaintiff in medical. *Id.* at ¶ 56. As a result of the evaluation, Defendant referred Plaintiff for an orthopedic consultation and ordered Plaintiff Ibuprofen 600mg to be taken three (3) times daily for six (6) months. *Id.* at ¶¶ 57-58.

On January 26, 2016, Plaintiff was transported to Sports Orthopedics and Spine for an evaluation of his left hand. *Id.* at ¶ 59. Based upon Plaintiff's presentation and testing results on that day, the provider there recommended that Plaintiff be evaluated by a hand surgeon. *Id.* at ¶ 60.

On that same day, Defendant provided Plaintiff with a Limited Activity Notice ("LAN"), restricting Plaintiff from work and physical activity for thirty (30) days. *Id*. at ¶ 61. On February 10, 2016, Defendant ordered Plaintiff a hand surgery consult concerning his proximal interphalangeal joint of his fifth digit on his left hand. *Id*. at ¶ 62. Plaintiff was seen in medical on February 22, 2016, on February 25, 2016, and February 26, 2016. *Id*. at ¶¶ 63-65.

On March 22, 2016, Plaintiff was transported to Nashville General Hospital at Meharry for an orthopedic surgical consult. *Id*. at ¶ 66. Based upon Plaintiff's presentation and testing results on that day, the provider opined that fusion surgery on the finger was not necessary and recommended that Plaintiff continue treatment with NSAIDs and employ the practice of buddy taping the finger during activity. *Id*. at ¶¶ 67-68. Plaintiff was then seen in medical on March 28, 2016, where he was provided with a requested LAN for thirty (30) days. *Id*. at ¶ 69.

In early June 2016, following Plaintiff's injury to his right knee, Plaintiff was ordered Ibuprofen to be taken twice a day for seven (7) days. Id. at ¶¶ 70, 74-75. On June 10, 2016, Plaintiff was ordered Ibuprofen 200 mg to be taken twice a day for seven (7) days. *Id*. at ¶ 75.

### III.  STANDARD OF REVIEW

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving

8

party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "However, a mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 251). Finally, "'[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## IV. ANALYSIS

### A. FAILURE TO EXHAUST

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Thus, a prisoner must exhaust all available remedies before filing an action in court. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Such "remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (citation omitted). An administrative remedy is not "available" when (1) "it operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).

9

"The plain language of the statute makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). "The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).

> The Supreme Court has held:
>
> [T]o properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules,"-rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218 (citation omitted). "[E]xhaustion is required even if the prisoner subjectively believes the remedy is not available; even when the state cannot grant the particular relief requested; and 'even where [the prisoners] believe the procedure to be ineffectual or futile....'" *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (citations omitted). "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance."). The Sixth Circuit "requires an inmate to make 'affirmative efforts to comply with the administrative

procedures,' and analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (citation omitted).

Failure to exhaust is an affirmative defense under the PLRA that must be established by a defendant. *Jones*, 549 U.S. at 216. Once a failure-to-exhaust defense has been raised and supported in a motion for summary judgment, the burden is on the prisoner plaintiff to present "'significant probative evidence'" to show that he has complied with the requirements of exhaustion. *Napier*, 636 F.3d at 225 (citation omitted); *Washington v. Hindsley*, No. 3:14-CV-01465, 2014 WL 6818965, at *3 (M.D. Tenn. Dec. 2, 2014) ("It is the Plaintiff's burden to rebut the Defendants' supporting evidence that shows his failure to exhaust."). To establish exhaustion of administrative remedies, the plaintiff must show that he presented his grievance(s) "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir.2003), *abrogated on other grounds*, *Woodford v. Ngo*, 548 U.S. 81 (2006).

The record shows that Plaintiff complied with the directions on the Inappropriate Grievance Notification forms by signing the bottom of his December 2015 and June 2016 grievances and checking "yes" that he wished to appeal the grievance chairperson's response. The grievance chairperson did not process Plaintiff's grievances, but instead responded with another Inappropriate Grievance Notification form. Based upon this record, it appears that Plaintiff did not attempt to bypass the administrative grievance process, but "affirmatively endeavored to comply with it." *Risher*, 639 F.3d at 240. The Magistrate Judge concludes that under the circumstances, Plaintiff's efforts were sufficient. *See id.* The Magistrate Judge now turns his attention to the merits of Plaintiff's claims.

### B. STATUTE OF LIMITATIONS

For actions under 42 U.S.C. § 1983, the statute of limitations is the limitations period for personal injury claims in the State where the claim arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Tennessee, Section 1983 actions are governed by a one-year statute of limitations period. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005); Tenn. Code Ann. § 28-3-104(a). Although state law provides the statute of limitations, federal law governs when the statute of limitations commences. *Sevier v. Turner*, 742 F.3d 262, 272 (6th Cir. 1984). The statute of limitations period "'commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Roberson*, 399 F.3d at 794 (citation omitted). The Sixth Circuit has added that "'[i]n determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights.'" *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (citation omitted).

Here, Plaintiff filed his complaint on March 24, 2017, the day that he submitted his complaint in this action to SCCF mailroom authorities. (Docket Entry No. 1, at 3).[4] Therefore, Plaintiff's claim involving his December 2015 grievance is time barred and should be dismissed.[5]

---

[4]Under the "prison mailbox rule," a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *Houston v. Lack*, 487 U.S. 266 (1988). The Sixth Circuit has explained that courts have expanded the understanding of this rule by assuming that, absent contrary evidence, a prisoner is deemed to have filed a complaint on the date he or she signed it. *Brand*, 526 F.3d at 925.

[5]The statute of limitations applicable to a prisoner plaintiff's civil rights action is tolled for the period during which his available state remedies are being exhausted. *Waters v. Evans*, 105 F. App'x 827, 829 (6th Cir. 2004). Even after taking into account the tolling period for exhaustion of his administrative remedies that ended on December 21, 2015, Plaintiff's complaint involving this claim is still untimely.

12

Moreover, because Defendant ended his employment as a physician at SCCF on August 4, 2016, the only applicable period of time in this action runs from March 24, 2016 to August 4, 2016. Therefore, the only applicable claim against Defendant stems from Plaintiff's treatment following the incident where Plaintiff injured his knee. Nevertheless, the Magistrate Judge will address the merits of Plaintiff's claims stemming from his December 2015 and June 2016 grievances.

## C.  EIGHTH AMENDMENT CLAIMS

The Eighth Amendment guarantees a prisoner the right to medical care, and this right is violated when prison authorities are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Supreme Court has stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.
>
> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. . . .
>
> . . . .
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

13

*Id.* at 104-06 (citations and footnotes omitted). A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, No. 03 2633, 2004 WL 2203585 (6th Cir. Sept. 15, 2004) (citation omitted); *Harrell v. Grainger Cty., Tenn.*, 391 F. App'x 519, 523 (6th Cir. 2010). Further, prisoners are not entitled to full access to the medical treatment of their choice. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

An Eighth Amendment claim of denial of medical care has both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component requires that the plaintiff's medical needs were sufficiently serious. *Id.* "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). However, actual physical injury due to indifference is not required. Unnecessary suffering is sufficient for Eighth Amendment purposes. *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991).

As to the subjective component, deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "[T]he plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

14

Officials may be shown to be deliberately indifferent to serious needs without evidence of conscious intent to inflict pain. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988). "However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted). Further, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5.

Here, the record shows that on November 27, 2015, Defendant ordered a left hand x-ray for Plaintiff that he received that same day. The x-ray revealed no fracture or dislocation, no evident abnormal soft tissue swelling, and no abnormal calcifications, and that the impression from the x-ray was unremarkable left hand. Plaintiff was ordered Ibuprofen 200 mg for the pain. On December 13, 2015, Plaintiff was ordered Ibuprofen 200 mg to be taken three (3) times a day per protocol, and on December 14, 2015, Plaintiff was evaluated in medical, where he was ordered Ibuprofen 200 mg to be taken three (3) times per day for seven (7) days; his finger was splinted; and he was instructed to follow up with medical if he continued to experience symptoms with his finger. On December 22, 2015, Plaintiff was evaluated in medical for pain in his fifth digit of his left hand, and based

15

upon the evaluation Plaintiff was referred to a provider. On January 8, 2016, Defendant treated Plaintiff in medical, and based upon his presentation on that date, Defendant referred him for an orthopedic consultation and ordered him Ibuprofen 600mg to be taken three (3) times daily for six (6) months. On January 26, 2016, the provider at Sports Orthopedics and Spine recommended that Plaintiff be evaluated by a hand surgeon.[6] On March 22, 2016, Plaintiff received a hand surgery consult at Nashville General Hospital at Meharry, and based upon his presentation and testing results, the provider opined that fusion surgery on the finger was not necessary and recommended that Plaintiff continue treatment with NSAIDs and employ the practice of buddy taping the finger during activity.

As to his June 2016 grievance, the record shows that Plaintiff was ordered Ibuprofen to be taken twice a day for seven (7) days, and that on June 10, 2016, Plaintiff was ordered Ibuprofen 200 mg to be taken twice a day for seven (7) days.

Thus, the record shows that Plaintiff received medical attention, but his claims simply pertain to a mere dispute over his medical treatment. "[T]he Eighth Amendment does not require prison medical providers to provide inmates with 'unqualified access to health care.' An inmate is entitled to adequate medical care, not the best care possible." *Rhinehart v. Scutt*, 894 F.3d 721, 750 (6th Cir. 2018) (citation omitted). Nor does "a desire for additional or different treatment… by itself suffice to support an Eighth Amendment claim." *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir.

---

[6]In his brief, Plaintiff incorrectly asserts that Dr. Sweo, at Sports Orthopedics and Spine, recommended that Plaintiff have surgery on his finger. (Docket Entry No. 81, at 12). On April 13, 2018, Dr. Sweo recommended that Plaintiff be evaluated by neurosurgery for possible surgery for a herniated lumbar disc. (Docket Entry No. 81-1, at 2).

16

2017). Although Plaintiff disagrees with the manner in which he was treated, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim.

Accordingly, based upon the record, the Magistrate Judge concludes that Plaintiff has failed to present evidence establishing an Eighth Amendment violation and that his claims are without merit.

## V. RECOMMENDATION

Accordingly, for these reasons, the Magistrate Judge **RECOMMENDS** (1) that Defendant's motion for summary judgment (Docket Entry No. 70) be **GRANTED;** (2) that all pending motions be **DENIED AS MOOT**; (3) that Plaintiff's claims against Defendant be **DISMISSED WITH PREJUDICE**; (4) that acceptance and adoption of this Report and Recommendation constitute **FINAL JUDGMENT** in this action; and (5) that any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

The parties have fourteen (14) days after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 15th day of November, 2019.

/s/    Joe  B.  Brown
JOE B. BROWN
United States Magistrate Judge